**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HEIDI PHILIPSEN,

    Plaintiff,

v.                                            Case No. 06-CV-11977-DT

UNIVERSITY OF MICHIGAN BOARD OF
REGENTS,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pending before the court is a motion for summary judgment, filed by Defendant the University of Michigan Board of Regents on January 17, 2007. The matter has been fully briefed and the court concludes a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2).[1] For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

Unless otherwise noted, the following facts were proffered by Defendant, admitted by Plaintiff Heidi Philipsen, and are therefore undisputed.

On March 24, 2005, Plaintiff applied for employment as a program coordinator in the Multidisciplinary Action Project ("MAP") program[2] at the Stephen M. Ross School of Business at the University of Michigan. (Def.'s Fact # 1; Pl.'s Fact # 1.) The program

---

[1]The court commends counsel for both parties on the caliber of the briefs presented to the court. The briefs were well-prepared, focused on the relevant issues, and free of the unnecessary vitriol which is too often found in filings before the court.

[2]The MAP program is responsible for placing business school students in internship programs with various employers and is a required course for business school students. (Def.'s Fact # 3; Pl.'s Fact # 3.)

coordinator was posted as a temporary position paying $14.50 per hour with no benefits. (Def.'s Fact # 2; Pl.'s Fact # 2.) At the time of Plaintiff's application, the MAP program was staffed by Program Director Gale Amyx, Assistant Director Patricia Meyer and Project Coordinator Laura Sanders. (Def.'s Fact # 4; Pl.'s Fact # 4.) Plaintiff was applying for the position being vacated by Sanders. (Def.'s Fact # 4; Pl.'s Fact # 4.) Although Plaintiff does not affirmatively admit Defendant's additional proffered fact that Amyx hired both Sanders and Meyer (who was the mother of three young children), neither does she dispute this fact. (Def.'s Fact # 4; Pl.'s Fact # 4.) Thus, this additional fact is accepted as uncontroverted.[3]

Six candidates, including Plaintiff, were interviewed for the position. One of the candidates was a male with children. (Def.'s Fact # 6.)[4] Amyx, Meyer and Sanders interviewed Plaintiff for the position on April 4, 2005. (Def.'s Fact ## 5, 7; Pl.'s Fact ## 5, 7.) During her interview, Plaintiff disclosed that she was the mother of two young children. (Def.'s Fact # 7; Pl.'s Fact # 7.) Plaintiff admits that the discussion of children arose in a friendly manner that she does not consider inappropriate. (Def.'s Fact # 7; Pl.'s Fact # 7.) Shortly after her interview, Plaintiff forwarded Amyx a humorous job description for the "position" of being a mother because she believed Amyx would appreciate the joke. (Def.'s Fact # 8; Pl.'s Fact # 8.)

Plaintiff was offered the position of project coordinator, and accepted the position with the understanding that it did not have University benefits. (Def.'s Fact # 9; Pl.'s

---

[3] *See* 8/01/06 Scheduling Order at 7 ("A fact not contested in the response is deemed uncontroverted.").

[4] Again, because Plaintiff does not dispute this fact, it is deemed uncontroverted. (8/01/06 Scheduling Order at 7.)

Fact # 9.)  Approximately one month after accepting the position, Plaintiff contacted Amyx and asked whether it would be possible to add University benefits to the position. (Def.'s Fact # 10; Pl.'s Fact # 10.)  Although Amyx responded that this request raised a "big issue" that she would have to discuss with her supervisor, Assistant Dean Graham Mercer,[5] she also stated that she supported Plaintiff's request to add benefits to the position.  (Def.'s Fact # 11; Pl.'s Fact # 11.)

In order to obtain benefits to the program coordinator position, Amyx was required to obtain the approval of Mercer and Dean Robert Dolan, and the position needed to be reclassified and reposted.  (Def.'s Fact # 12; Pl.'s Fact # 12.)  Amyx thus advised Plaintiff that she faced a risk that another candidate could be hired for the position.  (Def.'s Fact # 12; Pl.'s Fact # 12.)  Plaintiff informed Amyx that she was willing to proceed with re-applying for the position.  (Def.'s Fact # 13; Pl.'s Fact # 13.)  Defendant contends that Plaintiff stated that she was no longer willing to accept the position unless benefits were offered, but Plaintiff disputes this contention.  (Amyx Dep. at 70, Def.'s Ex. 7; Pl.'s Aff. at ¶ 4, Pl.'s Ex. A.)  The University approved this position change and it converted the program coordinator position into a position with benefits. (Def.'s Fact # 14; Pl.'s Fact # 14.)  Amyx advised Plaintiff that she was her preferred candidate for the position.  (Def.'s Fact # 14; Pl.'s Fact # 14.)

In July, 2005, Amyx learned that her assistant director, Meyer, had accepted another position at the University.  Amyx contacted Plaintiff and inquired whether she would be interested in applying for the assistant director position.   (Def.'s Fact # 15;

---

[5] This portion of Defendant's proposed fact number 10 is deemed uncontrovered. (8/01/06 Scheduling Order at 7.)

Pl.'s Fact # 15.)  Plaintiff admits that Amyx seemed very supportive of Plaintiff's application for the assistant director position and even provided suggestions to Plaintiff for her cover letter.  (Def.'s Fact # 16; Pl.'s Fact # 16.)

Amyx received twenty-one applications for the position of assistant director, three of which were from males.  Amyx did not grant interviews to any of the male candidates.  (Def.'s Fact # 17.)[6]  Prior to completing the interview process, Amyx asked Plaintiff if she was willing to accept the project coordinator position with benefits should Amyx be required to hire another candidate for the assistant director position. (Def.'s Fact # 16; Pl.'s Fact # 16.)  According to Defendant, Plaintiff indicated that she would not be willing to "go backwards" and accept the project coordinator position.  (Amyx Dep. at 68-69, Def.'s Ex. 7; Meyer Dep. at 43, Def.'s Ex. 9.)  Plaintiff contends, however, that she never gave an "absolute no," and instead

> said that I wasn't in the position--that I didn't want to think of that at that point, that if--It would be hard for me after being through the loops and to have that opportunity such as that, but that I would think about it when the time came.  At that point it would be difficult for me to--but that I would have to think about it.

(Pl.'s Dep. at 51-52, Pl.'s Ex. B.)  The court considers this dispute immaterial.  At a minimum, it is undisputed that Plaintiff expressed that it would be, at least, "difficult" for her to accept the project coordinator position with benefits.

On August 16, 2005, Plaintiff was offered the assistant director position.   (Def.'s Fact # 19; Pl.'s Fact # 19.)  Two days later, Amyx informed Plaintiff that the salary for the position was $48,000.  Plaintiff chose her start date and then inquired whether it

---

[6]Defendant's proposed fact number 17 is deemed uncontroverted.  (8/01/06 Scheduling Order at 7.)

4

would be possible to work a part-time schedule for one week only, because she "had to start from scratch with child care, and [she] wanted to ease [her] kids into that week so that everything else would go flawlessly thereafter." (Pl.'s Dep. at 87, Pl.'s Ex. B.) Amyx responded that the position was a full-time position and she would have to take vacation days to work part-time the first week. (Def.'s Fact # 20; Pl.'s Fact # 20.)

According to Plaintiff, prior to being advised of the salary for the assistant director position, Amyx stated: "I've got an offer for you. Before I give it to you, I have a question . . . Are you sure you don't want to stay at home to be with your children." (Pl.'s Dep. at 78, Pl.'s Ex. B.) Plaintiff contends that she was taken aback by the question, and thought it was "a bit odd" that Amyx asked her that question. (*Id.* at 80.)

At some point, either before or after Plaintiff received the job offer, Plaintiff informed Amyx and Meyer that her au pair was not working out and that she needed to make alternate child care arrangements. (Def.'s Fact # 21; Pl.'s Fact # 21.) While the parties dispute whether Plaintiff communicated this before or after she received the job offer, this dispute is not material.

On August 24, 2005, Plaintiff sent Amyx an e-mail in which she inquired about the possibility of a flex-time work schedule. (Def.'s Fact # 23; Pl.'s Fact # 23.) Plaintiff proposed working Monday through Thursday, 7:00 a.m. to 4:00 p.m. (with a lunch break), or 8:00 a.m. to 4:00 p.m. (without a lunch break), and working from home part of every Friday. (Def.'s Fact # 23; Pl.'s Fact # 23.)

Amyx responded by e-mail that the schedule proposed by Plaintiff was not acceptable for the operation of the MAP program. (Def.'s Fact # 24; Pl.'s Fact # 24.) Plaintiff sent Amyx a return e-mail that explained her reasons for inquiring about a flex-

time schedule, including her reasoning for asking about working through lunch. (Def.'s Fact # 24; Pl.'s Fact # 24.) Plaintiff's e-mail stated, in part:

> Throughout my training time with Trish, however, upon my focused inquiry regarding this subject, she specifically conveyed to me that she often worked straight through the work day without taking a break for lunch,[7] so that she could get home to her three sons one hour earlier at the end of the day--of course, only during those months that do not fall under the intense MAP January-through-the-end-of-April phase. She told me that you, Andy and Graham were very supportive of this practice, as long as she fully addressed her duties and completed her work.
>
> Thus, I left my on-campus training session with the solid impression that the flexibility to work from 8 a.m. until 4 p.m., but only during the "off" non-overtime months, from September to December and, again, May to August, was a fully approved practice. Nevertheless, I thought it would be best to be up front about the scheduled charting of this and, thus, my email to you.

(Def.'s Ex. 13.) Plaintiff's e-mail continued, and expressed a hope that during the slower months, Plaintiff would occasionally be permitted to work through lunch and leave the office at 4:00 p.m. (Def.'s Fact # 24; Pl.'s Fact # 24.)

Amyx testified that she felt that Plaintiff's e-mail was disrespectful and that she felt it was part of a pattern in which Plaintiff was never completely satisfied with the terms of her employment. (Def.'s Fact # 26; Pl.'s Fact # 26.)

On August 26, 2005, Amyx sent Plaintiff a letter rescinding the offer of employment. (Def.'s Fact # 27; Pl.'s Fact # 27.) The letter stated that "[w]e are concerned about you as a candidate for this position, your commitment, and your terms for this position are problematic." (Def.'s Ex. 14.)

---

[7]The parties quibble over exactly what Meyer told Plaintiff regarding working through lunch, but the dispute is immaterial. The parties do agree that Meyer told Plaintiff, at least, that she was occasionally allowed to modify her work schedule to accommodate her child-care needs. (Def.'s Fact # 25; Pl.'s Fact # 25.)

6

In October 2005, Defendant filled the assistant director position and the project coordinator position. (Def.'s Fact # 28; Pl.'s Fact # 28.) Both positions were filled with females.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").

## III.  DISCUSSION

7

Defendant seeks summary judgment on Plaintiff's disparate treatment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2102 *et seq.*[8]  Defendant asserts that summary judgment is appropriate on both claims because Plaintiff has failed to produce evidence which could establish a prima facie case of discrimination. Plaintiff responds that a jury question exists regarding whether Defendant impermissibly discriminated against her on the basis of her gender and parental status.

Plaintiff asserts a "sex-plus" discrimination action against Defendant. "Sex-plus" discrimination cases were first identified by the Supreme Court in *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971), where the Court held that Title VII does not permit an employer to have "one hiring policy for women and another for men-each having pre-school-age children." *Id.* at 544. "'Sex-plus' discrimination exists when a person is subjected to disparate treatment based not only on her sex, but on her sex considered in conjunction with a second characteristic." *Derungs v. Wal-Mart Stores, Inc.,* 374 F.3d 428, 439 n.8 (6th Cir. 2004). Here, Plaintiff claims that Defendant unlawfully rescinded her job offer based on her status as a woman with small children.

Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004); *Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751, 766 (E.D. Mich. 1998). In order to establish a claim of gender discrimination, Plaintiff must either present direct evidence of discrimination or indirect, circumstantial evidence of discrimination through

---

[8]The parties have agreed that Plaintiff's disparate impact claims under Title VII and ELCRA (Counts III & IV) may be dismissed, leaving only Plaintiff's disparate treatment claims under Title VII and ECLRA (Counts I and II).

8

the burden shifting analysis set forth in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). The parties first dispute whether Plaintiff has presented direct evidence of discrimination.

### A. Direct Evidence

Plaintiff argues that she has produced direct evidence which, if believed, would "demonstrate that an employer used a forbidden consideration with respect to any employment practice." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (citations omitted). Defendant disagrees and argues that Plaintiff must therefore establish discrimination through circumstantial evidence and by utilizing the *McDonnel Douglas* burden-shifting analysis.

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted).[9] "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). "For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of*

---

[9]"Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination." *Jacklyn*, 176 F.3d at 926 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir.1994)).

9

*Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir. 1993)).

Plaintiff argues that Amyx's alleged August 18, 2005 question constitutes direct evidence of discrimination. Specifically, Plaintiff asserts that prior to telling her the salary for the assistant director position, Amyx asked: "Are you sure you don't want to stay at home to be with your children?" (Pl.'s Dep. at 78, Pl.'s Ex. B.)[10] Plaintiff relies on an unpublished case from the Southern District of Texas in which the court found that a supervisor's question, "[W]hat are we going to do now [that I know you're pregnant]," constituted direct evidence of discrimination. *Stansfield v. O'Reilly Automotive, Inc.,* No. H-04-4161, 2006 WL 1030010, *3 (S.D. Tex. April 19, 2006). Aside from the fact that *Stansfield* is nonbinding authority with which the court is not bound to agree or follow, the court also finds that the facts of this case are distinguishable. While the question was perhaps not an appropriate question to ask Plaintiff, it does not *necessarily* evince a discriminatory intent, as is required in order to constitute direct evidence of discrimination.[11] *See Jacklyn*, 176 F.3d at 926. This is particularly true given that Plaintiff contends she was asked the question *prior* to being

---

[10]Defendant disputes that Amyx asked this question, and instead asserts that Amyx asked Plaintiff if she was sure she wanted to work full time in response to Plaintiff's request to work part-time her first week of employment. (Amyx Dep. at 81-82; Def.'s Ex. 7.) For summary judgment purposes, the court will construe the facts in a light most favorable to Plaintiff and accept her version of events.

[11]This is not to say that the question could not constitute circumstantial evidence of a discriminatory animus. The court only finds that the statement falls short of the standard because it is not a statement that "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn*, 176 F.3d at 926.

10

given her salary information. *Stansfield*, the only case on which Plaintiff relies, does not compel the conclusion that Amyx's statement constitutes direct evidence of discrimination.

Instead, the court finds that the cases on which Defendant relies actually compel the opposite conclusion. This case is almost directly analogous to *Kocak v. Community Health Partners of Ohio, Inc.,* 400 F.3d 466 (6th Cir. 2005), in which the Sixth Circuit held that a supervisor's question as to whether the plaintiff was pregnant or intended on having more children was not direct evidence of discrimination. *Id.* at 471. The *Kocak* court noted that "[c]ertain comments can be 'too abstract, in addition to being irrelevant and prejudicial, to support a finding of [pregnancy] discrimination.'" *Id.* (quoting *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 n. 2 (6th Cir.1986)). The court finds that Amyx's alleged question does not require the conclusion, without any additional inferences, that Defendant discriminated against Plaintiff on the basis of her status as a mother with young children. *Id.*; *see also Johnson,* 319 F.3d at 865 (finding comments expressing concern about the potentially detrimental effect on business of having an African-American co-manager, and remarks about the plaintiff's intellectual shortcomings and lack of ability, initiative and analytical skills were not direct evidence of discrimination); *Malone v. USA Today,* 348 F. Supp. 2d 866, 873 (E.D. Mich. 2004) (finding supervisor's alleged question as to whether the plaintiff would be coming back to work after maternity leave and alleged statement, "Why don't you take some time, think about what kind of job you will be able to do or will make you happy, think about it" were not direct evidence of pregnancy discrimination); *Fuller v. GTE Corporation/Contel Cellular, Inc.*, 926 F.Supp. 653, 656 (M.D. Tenn. 1996) (finding no

direct evidence of gender discrimination in a "sex-plus" discrimination case, where supervisor had allegedly told the plaintiff that she needed to get her priorities straight and that her job came first). Here, as the court found in *Kocak*, Amyx's alleged question is not direct evidence of discrimination because it does not *compel* a reasonable factfinder to conclude that Plaintiff's job offer was rescinded for discriminatory reasons. *Kocak,* 400 F.3d at 471.

### B.  Circumstantial Evidence

Because Plaintiff has failed to produce direct evidence of discrimination, Plaintiff must present sufficient circumstantial evidence to create a triable issue under the *McDonnel Douglas* burden-shifting analysis. *McDonnel Douglas*, 411 U.S. 792. To make out a prima facie case for gender discrimination, Plaintiff must show that she was (1) a member of the protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated differently than similarly situated male employees for the same or similar conduct. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)). If Plaintiff establishes a prima facie case of gender discrimination, the burden of production shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action. *Id.* (citing *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1224 (6th Cir. 1996)). If the defendant provides a legitimate, non-discriminatory reason, the plaintiff must then produce evidence that the defendant's proffered reason is a pretext for discrimination. *Id.*

For summary judgment purposes, Defendant does not appear to dispute that Plaintiff can present a triable issue with respect to prongs (1), (2) and (3). Instead,

Defendant argues that Plaintiff's claim fails because she has failed to identify male employees with young children who were treated differently for the same or similar conduct. Plaintiff argues that in "sex-plus" discrimination claims, such as those she is asserting against Defendant, she need not show disparate treatment of a male comparator. Instead, she argues that she can satisfy her burden by showing that women without young children were treated differently than women with young children.

As stated above, "sex-plus" discrimination arises when an employer discriminates against a person based not only on her sex, but on her sex considered in combination with another characteristic, such as parental status. *Derungs,* 374 F.3d at 439 n.8. Courts are split, however, over whether the proper comparator may only include a person outside of the protected class who has the same "plus characteristic" as the plaintiff (in this case, a male with young children) or whether the comparator may include any *person* (male or female) who lacks the "plus" characteristic (in this case, a female without young children). *See Gee-Thomas v. Cingular Wireless,* 324 F. Supp. 2d 875, 884 n.6 (M.D. Tenn. 2004) (noting disagreement among courts "whether or not a plaintiff claiming sex plus discrimination must compare herself to a similarly-situated person of the opposite gender in order to prevail on her claim"). The Sixth Circuit has not directly addressed this question, and both parties cite cases in support of their respective positions. Having reviewed the cases, the court is more persuaded by those that require the comparator to be outside of the protected class, and thus will accept Defendant's argument.

Plaintiff first cites *Back v. Hastings On Hudson Union Free School Dist.,* 365 F.3d 107 (2nd Cir 2004), a "sex-plus" discrimination case in which the Second Circuit held

that stereotyped remarks, such as the supposition that a woman is unqualified for a position because she does not conform to a gender stereotype, can constitute evidence that gender played a part in an adverse employment decision, even without evidence of a male comparator. *Id.* at 119. The court stated:

> Defendants are thus wrong in their contention that [the plaintiff] cannot make out a claim that survives summary judgment unless she demonstrates that the defendants treated similarly situated men differently. [The plaintiff] has admittedly proffered no evidence about the treatment of male administrators with young children. Although her case would be stronger had she provided or alleged the existence of such evidence, there is no requirement that such evidence be adduced.

*Id.* at 121. Plaintiff also points to an unpublished case from the Southern District of New York, which held:

> When a plaintiff alleges discrimination on the basis of sex in conjunction with some other characteristic, the defendant's selection of someone of the same sex as plaintiff but without the added characteristic is insufficient to defeat an otherwise legitimate inference of discrimination-the essence of a plaintiff's prima facie case. Indeed, the point of *Phillips* and its progeny is that a defendant should not be able to escape liability for discrimination on the basis of sex merely by hiring some members of the protected group.

*Trezza v. Hartford, Inc.,* No. 98 CIV. 2205, 1998 WL 912101, 6 (S.D.N.Y. Dec. 30, 1998) (citing *Phillips,* 400 U.S. 542). Plaintiff also cites *McGrenaghan v. St. Denis School*, 979 F.Supp. 323, 327 (E.D. Pa. 1997), where the Eastern District of Pennsylvania allowed a "sex-plus" discrimination action to survive summary judgment where the plaintiff, a mother with a disabled child, was replaced by woman without disabled children.[12] Finally, Plaintiff relies on another Eastern District of Pennsylvania

---

[12]The court notes that in *McGrenaghan,* the plaintiff had "also provided direct evidence of discriminatory animus against working mothers and mothers with disabled children." 979 F.Supp. at 327.

14

case where the court found it sufficient that the plaintiff, a woman over forty, had identified other employees outside her protected class, two women under forty, who were treated differently. *Arnett v. Aspin,* 846 F.Supp. 1234, 1241 (E.D. Pa. 1994).

Defendant cites multiple cases reaching the opposite conclusion. In *Fuller v. GTE Corporation/Contel Cellular, Inc.*, 926 F.Supp. 653 (M.D. Tenn. 1996), the court granted summary judgment to the defendant where the plaintiff had not produced any evidence "to indicate that women were treated differently from men or that women with young children were treated differently from men with young children." *Id.* at 658. The court stated that "[e]ven in the so-called 'sex plus' discrimination analysis, Plaintiff must first show that she was treated differently from men." *Id.* Defendant also cites *Fisher v. Vassar College* 70 F.3d 1420 (2nd Cir. 1995), where the court held that "[t]o establish that [the defendant] discriminated on the basis of sex plus marital status, plaintiff must show that married men were treated differently from married women." *Id.* at 1446. Similarly, the Tenth Circuit has held that "[t]o be actionable, however, gender-plus discrimination must be premised on *gender*." *Coleman v. B-G Maintenance Management of Colorado, Inc.,* 108 F.3d 1199, 1203 (10th Cir. 1997). The court continued:

> As one scholar has artfully explained, Title VII contemplates gender-plus claims because
>
>> when one proceeds to cancel out the common characteristics of the two classes being compared ([e.g.,] married men and married women), as one would do in solving an algebraic equation, the cancelled-out element proves to be that of married status, and sex remains the only operative factor in the equation.
>
> Lex K. Larson, Employment Discrimination § 40.04, at 40-12 (2d ed.1996) (emphasis added). Thus, although the protected class need not include all

15

women, the plaintiff must still prove that the subclass of women was unfavorably treated as compared to the corresponding subclass of men.

*Id.* at 1203.

The court is persuaded by the reasoning of *Fuller, Fisher* and *Coleman.* As the *Fuller* court stated:

> Discrimination against married women [or women with young children] constitutes discrimination on the basis of sex only if a different standard, i.e., the marital [or parental] status of the person, has been applied to men and women. Absent proof of the standard applied to men, obviously [P]laintiff[] ha[s] not established that such standard differs from the one applied to women.

*Fuller,* 926 F.Supp. at 658. To allow Plaintiff to argue that Defendant discriminated against her as compared to women without young children would turn this gender discrimination case into a parental discrimination case. Instead, the court agrees with Defendant that "gender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender." *Coleman,* 108 F.3d at 1203.

This conclusion is also consistent with the Sixth Circuit's analysis in *Derungs v. Wal-Mart Stores, Inc.* 374 F.3d 428 (6th Cir. 2004). In *Derungs*, the Sixth Circuit held that a prohibition against breast-feeding in a place of public accommodation did not violate the Ohio Public Accommodations statute, Ohio Rev. Code § 4112.02. *Derungs,* 374 F.3d at 440. In so holding, the court relied, in part, on the fact that when breast-feeding claims had been analyzed in "sex-plus" employment cases outside of the Sixth Circuit, courts had found such claims to be outside the realm of sex discrimination cases because of the lack of a male comparator. *Id.* at 438. The court noted:

> "Sex-plus" discrimination exists when a person is subjected to disparate treatment based not only on her sex, but on her sex considered in

16

> conjunction with a second characteristic. *See e.g., Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). Under a "sex-plus" theory of discrimination, it is impermissible to treat men characterized by some additional characteristic more or less favorably than women with the same added characteristic. *See, Fisher v. Vassar College,* 70 F.3d 1420, 1448 (2d Cir.1995), *on reh'g en banc*, 114 F.3d 1332 (2d Cir.1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

*Id.* at 438 n.8. Although the Sixth Circuit's reasoning is technically dicta, it is nonetheless instructive and provides further support for the court's conclusion that, to sustain her claim, Plaintiff must identify similarly situated men with young children who were treated differently. "[I]f there is no comparable subclass of members of the opposite gender, the requisite comparison to the opposite gender is impossible." *Martinez v. N.B.C., Inc.*, 49 F. Supp. 2d 305, 310 (S.D.N.Y. 1999) (*cited in Derungs*, 374 F.3d at 439).[13]

Here, there is no evidence that Plaintiff was treated differently than were males with young children, or males in general for that matter. Indeed, Plaintiff was offered the position of Program Coordinator over a male applicant with children. (Def.'s Fact # 6.)[14]

---

[13]The court is also persuaded by the excellent analysis set forth by the underlying district court in *Derungs. See generally, Derungs v. Wal-Mart Stores, Inc.*, 141 F. Supp. 2d 884, 890 (S.D. Ohio 2000). The district court found, among other things:

> Title VII forbids gender discrimination in employment, but gender discrimination by definition consists of favoring men while disadvantaging women or vice versa. The drawing of distinctions among persons of one gender on the basis of criteria that are immaterial to the other, while in given cases perhaps deplorable, is not the sort of behavior covered by Title VII.

*Id.* at 890 (citing *Martinez*, 49 F. Supp. 2d at 309).

[14]Again, because Plaintiff does not dispute this fact, it is deemed uncontroverted. (8/01/06 Scheduling Order at 7.)

17

She was also offered the assistant director position, despite Amyx's knowledge that Plaintiff had young children. (Def.'s Fact # 19; Pl.'s Fact # 19.) Finally, after Plaintiff's job offer was rescinded, both the assistant director position and the project coordinator position were filled with females. (Def.'s Fact # 28; Pl.'s Fact # 28.) Under these facts, and the authority of *Fuller, Fisher*, *Coleman* and *Derungs*, the court finds that Defendant is entitled to summary judgment on Plaintiff's "sex-plus" claims under Title VII and ELCRA.[15]

## IV. CONCLUSION

IT IS ORDERED that Defendant's January 17, 2007 motion for summary judgment [Dkt. # 12] is GRANTED. Summary judgment will be entered on Counts I and II of Plaintiff's complaint. Counts III and IV are hereby DISMISSED, by agreement, with prejudice.

A separate judgment will issue.

---

[15] Even if summary judgment were not appropriate on Plaintiff's *prima facie* case, the court would grant summary judgment on the issue of pretext. Although Defendant does not explicitly so argue, Plaintiff included an analysis on this issue in her response and thus has been allowed an opportunity to present her pretext evidence. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Seay v. Tennessee Valley Authority,* 339 F.3d 454, 463 (6th Cir. 2003). Reasonable jurors could not find, based on the undisputed evidence before the court, that Defendant's proffered legitimate business reason for rescinding Plaintiff's job offer (*i.e.*, Plaintiff's attitude in continuously requesting changes to the terms of her employment) was pretextual. The undisputed evidence before the court reveals a pattern of Plaintiff "nibbling," i.e., repeatedly asking for benefits or improved benefits and other more favorable terms as the job negotiations continued. More importantly, there is nothing sufficient to refute Amyx's testimony that she believed Plaintiff was disrespectful and that she thought it was part of a pattern in which Plaintiff was never completely satisfied with the terms of her employment. (Def.'s Fact # 26; Pl.'s Fact # 26.)

18

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  March 22, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 22, 2007, by electronic and/or ordinary mail.

        S/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522